IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TREVOR BOLTON,** | ) | **CASE NO.  1:18 CV 1164** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **CHAE HARRIS, WARDEN,** | ) | **Magistrate Judge David Ruiz** |
| | ) | |
| **Respondent.** | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Report and Recommendation issued by Magistrate Judge David Ruiz.  (Docket #32.)  On May 21, 2018, Petitioner, Trevor Bolton, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket #1.)  The Magistrate Judge recommends that the Petition be denied.

### Factual and Procedural Background

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

> In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *Johnson v. Genovese*, 924 F.3d 929, 938 (6th Cir. 2019); *Thomas v. Stephenson*, 898 F.3d 693, 696 (6th Cir. 2018). The same deference is applied to state-court factual findings made by a state appellate court based on the trial record. *Johnson*, 924 F.3d at 938; *Carruthers v. Mays*, 889 F.3d 273, 277 n.1 (6th Cir. 2018), cert. denied, 139 S. Ct. 1173 (2019). The petitioner has the burden of rebutting the presumption of correctness by clear

and convincing evidence. *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018) (per curiam); *Mitchell v. MacLaren*, 933 F.3d 526, 531-532 (6th Cir. 2019) (citing *Henley v. Bell*, 487 F.3d 379, 384 (6th Cir. 2007)); *Johnson*, 924 F.3d at 938; *Hendrix v. Palmer*, 893 F.3d 906, 917 (6th Cir. 2018). Bolton does not challenge the state court's recitation of the underlying facts.

The Ohio Court of Appeals provided the following factual and procedural background:

> On November 30, 2010, appellant's jury trial commenced. At trial, the victim, K.K., testified that in 2002 and 2003, she lived in a two-story house in East Cleveland, Ohio. K.K. testified that on May 7, 2003, she was in her upstairs bedroom when she heard noises coming from downstairs. When she went into the hallway, she saw a man coming up the stairs. She testified that she did not see the man clearly, but heard him say, "put your head down, turn around." At that point, the man grabbed her and pushed her into her bedroom. K.K. testified that the man pointed a firearm at her while he pulled off her pants. Subsequently, the man penetrated her with his mouth, fingers, and penis. K.K. testified that her eyes were closed when the man was on top of her, however, when she opened her eyes, she saw the firearm laying near her face on the bed. K.K. testified that she immediately contacted the police once the man left her house. When the officers arrived at her residence, K.K. informed them that she had been raped, and she was taken to the hospital for examination.
>
> Dr. Daniel Dickriede testified that he was the emergency room doctor at South Pointe Hospital when K.K. arrived. Dr. Dickriede testified that K.K. stated that the individual who raped her was armed and pressed the gun to the back of her head. Dr. Dickriede testified that the completed rape kit and K.K.'s clothing were given to the Cleveland Police Department ("CPD"). He testified that the physical examination of K.K. showed that her memory was intact, although she was suffering from depression.
>
> Detective Alan Strickler of the CPD, Sex Crimes and Child Abuse Unit, testified that he met with K.K. on May 21, 2003 and took her written statement. Det. Strickler testified that he lost contact with K.K. when she moved out of her Cleveland home. The case became a cold case until 2007, when Det. Strickler learned that there was a DNA match found in a DNA profile database. The database identified appellant as a DNA match.
>
> Det. Strickler testified that he attempted to contact K.K. immediately, but was unable to locate her until 2010. He testified that once he was able to locate K.K., she came to his office and was shown a photo lineup. K.K. indicated that No. 6 in the photo array looked familiar, but she was unable to say if he was the person whom raped her. At that point, Det. Strickler

informed K.K. that "Trevor Bolton is No. 6. Any reaction?" Det. Strickler testified that K.K. informed him that "she knew him from somewhere." Upon showing K.K. a different photograph, K.K. stated, "I definitely know him." Subsequently, Det. Strickler made contact with appellant and obtained his written consent to take a buccal swab.

Catherine Dennisoff of the CPD Forensic Lab testified that on May 19, 2010, Det. Strickler brought the buccal swab to the forensic lab in a property envelope. The property envelope was sealed and delivered to the Ohio Bureau of Criminal Identification and Investigation unit ("BCI") on May 26, 2010. Dennisoff explained that she complied with CPD forensic lab polices and procedures for handling evidence.

Dale Laux, a laboratory technician employed by BCI, testified that on June 17, 2003, the CPD submitted six items for forensic analysis in this case, including K.K.'s rape kit, clothing, and bedding. Laux testified that he tested the items in compliance with the BCI standard procedures. Laux testified that he discovered body fluids and semen stains on the underwear submitted by the CPD and preserved the evidence for subsequent DNA analysis.

Melissa Zielaskiewicz, a forensic scientist employed by BCI, testified that the uniqueness of one's DNA makes it reliable evidence to identify a party associated with a crime. She testified that BCI took cautionary measures to ensure the integrity of its testing. Zielaskiewicz testified that she received evidence relating to K.K.'s case on June 17, 2003. Zielaskiewicz testified that she was advised in 2007 that there was a hit on the department's DNA database informing that an individual had been potentially identified as the source of the DNA. Zielaskiewicz testified that the computer match of the DNA was made to appellant. After the computer match, a second report was generated on June 24, 2010, using the buccal swabs taken from appellant. Zielaskiewicz testified that after conducting the DNA analysis, she concluded that appellant could not be excluded as a source of the semen found on K.K.'s underwear. Zielaskiewicz further stated that "the chance of finding another random person in the population that would have the same DNA profile" was "1 in 1,481,000,000,000."

At the conclusion of trial, the jury found appellant guilty of kidnapping, gross sexual imposition, and one count of rape. Additionally, the trial court found appellant guilty of having a weapon while under disability. Appellant, however, was found not guilty by the jury on the aggravated robbery count, two counts of rape, and the firearm specifications.

On January 6, 2011, the trial court sentenced appellant to ten years on the kidnapping charge and ten years on the rape charge, to run concurrently to

each other. Additionally, the trial court sentenced appellant to 18 months on the gross sexual imposition charge and five years on the charge of having a weapon while under disability, to run consecutively to each other and consecutively to the rape and kidnapping charges. Accordingly, appellant was ordered to serve an aggregate term of 16 and one-half years.

(R. 14-1, RX 20, PageID #: 296-300; *State v. Bolton*, No. 96385, 2012 WL 171039, at *1-*2 (Ohio Ct. App. Jan. 19, 2012).)

The petitioner filed a timely direct appeal on February 7, 2011. (R. 14-1, RX 16.) His appeal raised twelve assignments of error:

1. Defendant was denied due process of law when the court overruled his motion to suppress.

2. Defendant was denied due process of law when the court overruled his motion to dismiss by reason of the unreasonable delay in commencing a prosecution.

3. Defendant was denied due process of law when the court refused to appropriate funds for an expert opinion to evaluate DNA evidence.

4. Defendant was denied his constitutional right of confrontation and cross-examination.

5. Defendant was denied due process of law and his right to present a defense when the court refused to instruct on the lesser offense of sexual battery and abduction.

6. Defendant was denied due process of law when the court refused to instruct, with reference to the kidnapping count, that a jury make a determination as to whether the victim was released in a safe place unharmed.

7. Defendant was denied a fair trial by reason of cumulative errors committed during the course of the trial.

> (a). Declaring witnesses to be experts in the presence of the jury[;]
> (b). Use of statistical evidence not prepared by the witness[;]
> (c). Unsupported claims by the prosecutor concerning DNA evidence[;]
> (d). Denigration of defense counsel[; and]
> (e). Improper testimony from Det. Alan Strickler[.]

-4-

8. Defendant was denied due process of law and assistance of counsel when the court rendered its verdict without allowing defendant or his counsel to make a closing statement.

9.  Defendant was denied due process of  law when the court found defendant possessed a firearm when the jury specifically found that defendant did not possess a firearm.

10. Defendant was denied due process of law when he was sentenced on one count of rape after the jury found him not guilty on two identical counts of rape.

11. Defendant was denied due process of law when the court overruled a motion for judgment of acquittal.

   (a).  Having a weapon while under disability[; and]
   (b). Verdicts for Rape, Kidnapping and Gross Sexual Imposition[.]

12. Defendant was subjected to unconstitutional multiple punishments when the court separately sentenced defendant for rape, kidnapping and gross sexual imposition.

13. Defendant was denied due process of law when the court applied the newly enacted Adam Walsh Act's registration requirements to defendant's offenses which occurred prior to the enactment of the Act.

14. Defendant was denied due process of law when the court did not assess costs in open court and cost[s] were assessed in the judgment entry.

(R. 14-1, RX 17, PageID #: 198-199.)  On January 19, 2012, the court of appeals affirmed the petitioner's convictions, but ruled that the kidnapping and gross sexual imposition convictions should merge for sentencing and remanded the case for resentencing. (R. 14-1, RX 20, PageID #: 331-332, 335; Bolton, 2012 WL 171039, at *17, *18.)  The court also found that Bolton should have been classified as a sex offender under the law in effect at the time of his offense and remanded for the trial court to reclassify him properly.  (R. 14-1, RX 20, PageID #: 333-334; Bolton, 2012 WL 171039, at *18.)  Finally, the court of appeals found that the trial court did not properly assess court costs on the record and remanded on that basis as well.  (R. 14-1, RX 20, PageID #: 334; Bolton, 2012 WL 171039, at *18.)  The Ohio Court of Appeals denied Bolton's motion for reconsideration.  (R. 14-1, RX 21, 23.)

Bolton then filed an appeal to the Supreme Court of Ohio, setting forth the following twelve propositions of law:

I.      A defendant has been denied due process of law when the court
        fails to suppress statements made by a defendant without counsel
        after defendant had been formally charged with the offense.

II.     A defendant has been denied due process of law when the court
        fails to dismiss a count of the indictment which is barred [by] the
        statute of limitations and there has been an unreasonable delay in
        commencing a prosecution.

III.    A defendant has been denied due process of law when the court
        refuses to appropriate funds for an indigent defendant for expert
        consultation to evaluate DNA evidence.

IV.     A defendant has been denied his constitutional right of
        confrontation and cross-examination where the court limits
        cross-examination of a prosecution witness.

V.      A defendant has been denied his constitutional right to present a
        defense when the court refuses to instruct on the lesser included
        offense of sexual battery and abduction in a rape and kidnapping
        prosecution.

VI.     A defendant has been denied due process of law when the court
        refuses to instruct, in a kidnapping prosecution, that a jury make a
        determination whether the victim was released in a safe place
        unharmed.

VII.    A defendant has been denied a fair trial by reason of cumulative
        errors committed during the course of the trial.

        1. Declaring witnesses to be experts in the presence of the jury[;].
        2. Use of statistical evidence not prepared by the witness[;]
        3. Unsupported claims by the prosecutor concerning DNA
        evidence[;]
        4. Denigration of defense counsel[; and]
        5. Improper testimony from Det. Alan Strickler[.]

VIII.   A defendant has been denied due process of law and the assistance
        of counsel when the court, in rendering its verdict, does not allow
        defendant nor his counsel to make a closing statement.

IX.     A defendant has been denied due process of law when the court
        [found] that a defendant possessed a firearm when the jury
        specifically ruled that defendant did [not] possess a firearm.

X.      A defendant has been denied due process of law when the court
        sentences defendant on the one count of rape after the jury found
        him not guilty on two identical counts of rape.

XI.     A defendant has been denied due process of law when the court
        overrules a motion for judgment of acquittal where there is
        insufficient evidence to permit a rational factfinder to return a
        verdict of guilty.

XII.    A defendant has been unconstitutionally and multiply sentenced to
        separate punishments where a court refuses to merge convictions
        for rape, kidnapping and gross sexual imposition.

(R. 14-1, RX 25.)  On June 6, 2012, the Supreme Court of Ohio denied leave to
appeal and dismissed the appeal as not involving any substantial constitutional
question.  (R. 14-1, RX 27; *State v. Bolton*, 132 Ohio St.3d 1411, 968 N.E.2d 492
(2012).)

        The trial court held a resentencing hearing on September 27, 2012, at
which the court ruled that gross sexual imposition and kidnapping were allied
offenses, sentenced Bolton on those offenses, and re-classified him as a
sexually-oriented offender.  (R. 14-1, RX 28.)  The trial court denied Bolton's
subsequent motion for reconsideration and modification of his sentence.
(R. 14-1, RX 31.)

        Bolton filed an appeal of the resentencing judgment, raising the five
following assignments of error:

1.      Defendant was denied due process of law when the court imposed
        sexual registration requirements based on a repealed statute.

2.      Defendant was denied due process of law when the court imposed
        consecutive sentences which were prohibited under the current
        version of §2929.41(A) of the Ohio Revised Code.

3.      Defendant was denied due process of law when the court upon a
        sentencing for consideration of merger for sentences failed to
        reduce the sentence for having a weapon under a disability.

4.      Defendant was denied due process of law when the court imposed
        a consecutive sentence without making the required finding.

5.      Defendant was denied due process of law when the court
        proceeded to resentence defendant and failed to consider the
        present status of the defendant.

-7-

(R. 14-1, RX 33, PageID #: 468.)  The court of appeals affirmed the judgment of
the trial court in part, but sustained the fourth assignment of error on the basis that
Ohio Rev. Code §2929.14(C)(4) applied to Bolton's resentencing, and the trial
court erred by not making any findings concerning consecutive sentences. (R.
14-1, RX 35; *State v. Bolton*, No. 99137, 2013 WL 3008785 (Ohio Ct. App. June
13, 2013).)  The court of appeals remanded to the trial court to make such
findings. Id.  The Ohio Court of Appeals denied Bolton's motion for
reconsideration. (R. 14-1, RX 36, 38.)

Bolton then filed another appeal to the Supreme Court of Ohio, setting
forth the following four propositions of law:

1.     A defendant has been denied due process of law when the court
       imposes [a] sexual registration requirement based on a repealed
       statute.

2.     A defendant has been denied due process of law when consecutive
       sentences are imposed under a law which prohibits the  imposition
       of consecutive sentences.

3.     A defendant has been denied due process of law when the court, at
       court ordered resentencing, fails to reduce a sentence for a third
       degree felony whose penalty has been reduced.

4.     A defendant has been denied due process of law when a court, at a
       resentencing, fails to consider the present status of a defendant.

(R. 14-1, RX 40.)  On November 20, 2013, the Supreme Court of Ohio declined
to accept jurisdiction of the appeal. (R. 14-1, RX 42; *State v. Bolton*, 137 Ohio
St.3d 1414, 998 N.E.2d 512 (2013).)

On May 29, 2015, Bolton filed a number of motions pro se: (1)  a motion
for DNA testing (R. 14-1, RX 43); (2) a motion for relief from judgment (R. 14-1,
RX 44); (3) a motion in support of allocution, in which he sought to renew his
previous Rule 29 motion for acquittal (R. 14-1, RX 45); (4) a motion for an
evidentiary hearing (R. 14-1, RX 46); (5) a motion to dismiss for delay in
sentencing (R. 14-1, RX 47); and, (6) a motion for leave to file a delayed motion
for a new trial (R. 14-1, RX 48).  The motion to dismiss argued that Bolton was
incarcerated under an invalid sentence because the trial court had not held a
resentencing hearing as mandated by the court of appeal's June 13, 2013 decision.
(R. 14-1, RX 47; see generally R. 14-1, RX 35,  PageID #: 501-503 (remanding
because trial court did not make findings required under §2929.14(C)(4) before
ordering sentence for weapons disability count to be consecutive); Bolton, 2013
WL 3008785, at *2-*3.)  The state filed a brief in opposition to the motion to

-8-

dismiss (R. 14-1, RX 49), and filed an omnibus brief in opposition to the other motions (R. 14-1, RX 50).

On September 16, 2015, the trial court held a hearing for purposes of resentencing Bolton and ruling on his May 29 motions. (R. 14-7, hearing tr., PageID #: 1293.) The court heard arguments from defense counsel and provided Bolton with his right to allocution. Id. at 1295-1299. The court denied the remaining motions. Id. at 1299-1300. The court then considered the §2929.14 factors for imposing consecutive sentences, and resentenced Bolton accordingly. Id. at 1300-1303; see also R. 14-1, RX 52 (journal entry).

The petitioner then filed an appeal of the second resentencing judgment, raising the following assignments of error:

1.  The trial court erred in imposing concurrent [sic] sentences where the trial court was obligated to impose concurrent sentences.

2.  The trial court erred in sentencing to [sic] the appellant to the five years for having a weapon under disability.

3.  The  trial court erred in denying appellant's motion to dismiss for the unjustifiable delay between remand and resentencing.

4.  The  trial court erred in failing to grant DNA testing as requested by the appellant.

(R. 14-1, RX 54, PageID #: 598.) The court of appeals affirmed the judgment of the trial court. (R. 14-1, RX 56; *State v. Bolton*, No. 103628, 2016 WL 4699950 (Ohio Ct. App. Sept. 8, 2016).)

Bolton next filed an appeal pro se to the Supreme Court of Ohio on October 21, 2016, setting forth the following four propositions of law:

1.  The decision of this court in *State v. Bonnell* (2014) 160 Ohio St.3d 209, requires a sentencing court, on remand for failing to make the requisite findings to  impose consecutive sentences, to impose concurrent sentences, and the failure to do so deprives the defendant of equal protection and due process of law.

2.  A  sentence imposed for a felony of the third degree on or after the HB-86 changes to R.C. §2929.14(A)(3)(b) must not exceed 36 months and a trial court lacks jurisdiction to do so, depriving a defendant of due process of law.

-9-

3.        A delay in imposing sentence of well over two years is presumptively prejudicial where the delay is not attributable in any way to the defendant and the denial of a proper motion to dismiss for the excessive delay is violative of due process.

4.        Where DNA evidence at trial is established by extrinsic evidence as non-definitive, the denial of a Motion for DNA testing deprives the defendant of equal protection and due process of law.

(R. 14-1, RX 58.) On March 15, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal. (R. 14-1, RX 59; *State v. Bolton*, 148 Ohio St.3d 1427, 71 N.E.3d 299 (2017).)

At about the same time, on October 24, 2016, Bolton filed an appeal through counsel to the Supreme Court of Ohio, setting forth the following propositions of law:

1.        Consistent with R.C. 2953.08(G), a trial court may not impose consecutive sentences on remand where the remand was based on the trial court's failure to make the required findings for consecutive sentences.

2.        Where the trial court conducts a de novo sentencing on remand, the court must apply the recent sentencing law and the statutory changes to prison terms for third degree felonies under R.C. 2929.14(A)(3)(b).

3.        Two years constitutes an unreasonable delay under Crim.R. 31(A).

4.        The interests of justice require that R.C. 2953.73(A) should not be strictly construed against persons who claim to be innocent and who seek DNA testing.

(R. 14-1, RX 61.) The Supreme Court of Ohio declined to accept jurisdiction of that appeal as well, on May 31, 2017. (R. 14-1, RX 62; *State v. Bolton*, 149 Ohio St.3d 1418, 75 N.E.3d 236 (2017).)

While his appeals were pending at the state high court, Bolton filed a motion for counsel (R. 14-1, RX 63) and an application pro se to reopen his appeal pursuant to Ohio App.R. 26(B) (R. 14-1, RX 64). As grounds for his Rule 26(B) motion to reopen, Bolton claimed that appellate counsel had been ineffective for failing to raise the following claims on direct appeal:

1.        The trial court erred as a matter of law in denying appellant's motion for relief from the judgment of conviction for having a

-10-

weapon under disability where the six year limitations period had expired prior to the commencement of the prosecution in this case.

2.  The trial court erred as a matter of law in failing to conduct an inquiry as to whether the gross sexual imposition and rape charges were allied offenses of similar import, and violated appellant's double jeopardy protection by imposing consecutive sentences for both.

3.  The trial court erred and abused its discretion in denying appellant's motion for leave to file delayed motion for new trial based upon newly discovered evidence conclusively establishing the appellant's innocence, without conducting a hearing or making any factual findings or legal conclusions, thus depriving the appellant of due process of law.

(R. 14-1, RX 64, PageID #: 711-713.)  The court of appeals denied Bolton's motion to reopen on July 28, 2017.  (R. 14-1, RX 66; *State v. Bolton*, No. 103628, 2017 WL 3311027 (Ohio Ct. App. July 28, 2017).)

Bolton then filed an appeal pro se to the Supreme Court of Ohio on September 8, 2017, setting forth the following propositions of law:

1.  Defendant was denied due process of the law when the court erred as a matter of law in denying appellant's motion for relief from the judgment of conviction for having a weapon under disability where the six year limitation period had expired prior to the commencement of the prosecution in the case.

2.  Defendant was denied due process of the law when the court erred as a matter of law in failing to conduct an inquiry as to whether the gross sexual imposition and rape charge were allied offense of similar import and violated appellant's double jeopardy protection by imposing consecutive sentence for both.

3.  Defendant was denied due process of the law when the court erred and abused its discretion in denying appellant's motion for leave to file a delayed motion for new trial based on newly discovered evidence conclusively establishing the appellant's innocence without conducting a hearing or making and [sic] factual findings and legal conclusions, thus depriving appellant of due process of law.

(R. 14-1, RX 69.)  On December 6, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  (R. 14-1, RX 70; *State v. Bolton*, 151 Ohio St.3d

-11-

1458, 87 N.E.3d 224 (2017).)

Bolton then filed the petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in this court on May 21, 2018.

(Report and Recommendation at pp. 3-15.)

On April 7, 2021, the Magistrate Judge issued his Report and Recommendation. (Docket #32.)  The Magistrate Judge recommends that the Petition be denied with respect to each of the Petitioner's eighteen grounds for habeas corpus relief.  On April 26, 2021, Petitioner filed his Objections to the Report and Recommendation.  (Docket #33.)

### Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to that report.  When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case de novo.  FED. R. CIV. P. 72(b) states:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

### Conclusion

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo*, considering the Objections of Petitioner.  The Magistrate Judge thoroughly examined the Record in this case, and presents an exhaustive, thorough and meticulous analysis of all of Petitioner's claims.   The Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own.

The Report and Recommendation issued by Magistrate Judge David Ruiz (Docket #32) is hereby ADOPTED in its entirety.

The Petition for Writ of Habeas Corpus (Docket #1) is DENIED.

This case is hereby TERMINATED.

### Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of

appealability as to any of the claims presented in the Petition.  28 U.S.C. § 2253 provides, in part,

as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required

under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could

debate whether . . . the petition should have been resolved in a different manner or that the issues

presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529

U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880,

893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner

must demonstrate only that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong.  *Slack*, 529 U.S. at 484.  Where the petition has been

-13-

denied on a procedural ground without reaching the underlying constitutional claims, the court must find that the petitioner has demonstrated that reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right *and* that reasonable jurists could debate whether the district court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated in the Magistrate Judge's Report and Recommendation, a reasonable jurist could not conclude that denial of the Petition is in error or that Petitioner should be permitted to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

DONALD C. NUGENT
Senior United States District Judge

DATED: May 13, 2021

-14-